## WILLIAM E. STONE *et al.*
### *v.*
## ALFRED DAGGETT *et al.*

1. PRINCIPAL AND AGENT. If an agent receives money of his principal with which to buy flax seed for the latter, and procures a settlement and a further payment on his representation that he has in store a given number of bushels, which is not true, and he afterwards sells a part of the seed, the principal may recover of him for the amount of the deficit and the amount so sold.

2. CONTRACT—*whether superseded by new one.* Where money is furnished to buy flax seed under a contract with a firm, and the seed purchased is held in a warehouse by the firm, and after the dissolution of the firm one of the members sends a warehouse receipt to the owner by mail, and it is retained by him, this will tend to establish the fact, that the owner assented to a new contract; but in such case parol evidence is admissible to show he did not agree to accept the receipt as a new contract, and thus release the firm.

APPEAL from the Circuit Court of Iroquois county; the Hon. N. J. PILLSBURY, Judge, presiding.

Mr. J. BROUSSEAU, for the appellants.

Mr. ROBERT DOYLE, Mr. WM. C. WILSON, and Mr. JAY H. ADAMS, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of assumpsit, brought by appellees against appellants, in the circuit court of Iroquois county. A trial was had before a jury, which resulted in a verdict in favor of appellees, for $6500.34.

The court overruled a motion entered by appellants for a new trial, and rendered judgment upon the verdict.

Several grounds have been urged by the counsel for appellants for a reversal of the judgment; but in the view we take of the facts disclosed by the record before us, the determination of two questions will be conclusive of the case.

*First*—Did appellants purchase and hold in store for appellees the quantity of flax seed which they represented to have done, by statement and settlement made November 25, 1872?

*Second*—Did appellees release appellant Comstock from liability as a member of the firm of Wm. E. Stone & Co., by taking the warehouse receipts dated January 25, 1873, signed by Wm. E. Stone?

In regard to the first question, it is apparent, from the evidence contained in the record, that appellants received from appellees the sum of $22,149.89, which was to be invested in flax seed for appellees. Out of this amount appellants paid for insurance and other items of expense, $640.74, and retained, as commissions for transacting the business, as per agreement, $1213.76, making a total amount of $1854.50, to be deducted from the amount received, which would leave in the hands of appellants the sum of $20,295.39, net, to be invested.

This entire amount of money appellants represented and reported they had invested in flax seed for appellees, and with it they had purchased fifteen thousand one hundred and seventy-two bushels. They had also received the additional amount of

eight hundred and five bushels of rent seed; making, in all, fifteen thousand nine hundred and seventy-seven bushels, which amount was, on the 25th day of November, 1872, reported to appellees as having been bought and then held in store by appellants for them, and for which amount appellees paid the firm of Wm. E. Stone & Co., appellants, as is fully established by the evidence.

Appellees base their right of recovery on the ground, that appellants did not invest all of their money in flax seed, as they had represented; that a portion of the money furnished was not invested, and that they were entitled to recover it back. Upon this point, evidence was introduced by appellees tending to prove that the statement of the quantity of flax seed purchased and held was false, and, in our judgment, the evidence fairly establishes the fact, that appellants had not purchased the quantity of seed they represented, and for which they had received the money of appellees.

Upon this question of fact submitted to the jury, they, by special verdict, found a deficit in the amount purchased, of three thousand and twenty-one bushels, and upon a careful inspection of the evidence, we are satisfied the finding of even a larger amount would have been justified.

In addition to this, it was proven, or at least evidence was introduced tending to prove, that of the seed purchased and held in the warehouse belonging to appellees, Wm. E. Stone, one of the appellants, without any pretense of right or authority, shipped to Chicago, and sold to one August John, some fourteen hundred and eighty-seven bushels. This, together with the deficit of three thousand and twenty-one bushels, was ample to sustain the amount of the verdict rendered by the jury; and, even if it be true, as insisted by appellants, that appellees recovered of the insurance companies for the flax seed burned in the warehouse, that fact does not, in the least, militate against the justness of the verdict. The record, however, fails to disclose the quantity of seed burned for which a recovery was had from the insurance companies by appellees.

In regard to the second question, it appears, from the evidence, that on or about the 9th day of November, 1872, the firm of Wm. E. Stone & Co. was dissolved; appellees had, however, no notice of that fact until about the 18th day of February, 1873. Afterwards, and on the 25th day of January, 1873, Wm. E. Stone prepared and executed, in his own name, two warehouse receipts, one for three thousand, and the other for seven thousand four hundred and fifty bushels of flax seed, which were sent by mail to appellees, at their residence in Lafayette, Ind. It is claimed by appellants that these warehouse receipts constituted a new contract, and that after their execution and delivery the firm of Wm. E. Stone & Co. was released from liability on the original contract in regard to the seed, and Wm. E. Stone was accepted in lieu of the firm.

The court, against the objection of appellants, permitted appellees to introduce evidence tending to show they did not agree to accept Wm. E. Stone instead of the firm, and that they did not assent to the change in the contract as evidenced by the warehouse receipts.

The contract under which the money was furnished to purchase the seed, was made with the company. The seed was purchased by the firm, and it was held in the warehouse by the company.

When the warehouse receipts were mailed by Wm. E. Stone to appellees and received by them, whether this changed the original contract and shifted the liability of the firm to that of Wm. E. Stone, would depend on the fact, whether appellees accepted the receipts as a new contract; and whether appellees assented to and accepted these receipts, was a question of fact to be determined by the jury from the evidence bearing upon that question.

In order to constitute a valid and binding contract, the minds of the contracting parties must meet. It is not pretended that appellees contracted expressly, in writing or otherwise, to release the firm and accept Wm. E. Stone; but the argument is, because they received the warehouse receipts they assented, and therefore are bound ; but assent can not be

established from the fact, alone, that the receipts were received through the mail and retained by appellees. That fact may tend to establish assent, but other evidence may be resorted to, which was done, to show that appellees did not in fact agree and assent to accept the receipts as a new contract. While parol evidence can not be resorted to to change the terms of a contract in writing, yet it was proper for the court to permit the evidence introduced to show that the minds of the parties did not meet in the pretended contract; that the contract claimed was not in fact consummated by the assent of appel-lees. *McEwen* v. *Morey*, 60 Ill. 32.

Upon this point the evidence was conflicting, and it was for the jury to determine; and while the fact that appellees had instituted a suit against appellant Stone alone, might be re-garded as a strong fact in support of appellants' theory of the case, yet the jury, from all the evidence, found that the original contract was not abandoned, but in force, and the firm liable, and we can not, under all the evidence, disturb the finding.

The instructions given for appellees, to which objections have been made, we think, in substance, state the law cor-rectly.

Perceiving no substantial error in the record, the judgment will be affirmed.

*Judgment affirmed.*